IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| MARVIN ALVARADO,<br><br>    Plaintiff,<br><br>vs.<br><br>CHRISTOPHER WALDEN, TRACY WYANT, JESSE ALLEN, and JOHN DOE DEFENDANTS 1 THROUGH 5,<br><br>    Defendants. | MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT<br><br><br><br>Case No. 2:09-CV-81 TS |

The Court has before it Defendants Christopher Walden ("Officer Walden") and Tracy Wyant's ("Sgt. Wyant") Motion for Summary Judgment.[1] Defendants filed the present Motion on March 9, 2011. To date, no response has been filed and the time to do so has now passed. In this Court, "[f]ailure to respond timely to a motion may result in the court's granting the motion without further notice."[2] Pursuant to this rule, and review of the merits of the Motion, the Court

---

[1]Docket No. 41. Defendant Jesse Allen was previously dismissed from this action on February 22, 2010 (Docket No. 20).

[2]DuCivR 7-1(c).

1

will grant Defendants' Motion.

## I. BACKGROUND

Plaintiff Marvin Alvarado brings claims under 42 U.S.C. § 1983 against Defendants for use of excessive force in violation of his Fourth Amendment rights. These claims stem from: (1) Sgt. Wyant's use of his taser gun against Plaintiff, and (2) Officer Walden's use of his police service dog against Plaintiff.

On Sunday, February 3, 2008, at approximately 3:08 a.m., five Taylorsville City police officers, including Defendants, responded to a 911 call for a domestic dispute involving a knife at a duplex located within the city. The 911 caller, identified as Gary Alvarado—the eighteen-year-old son of Plaintiff—told the 911 operator that his father was "going crazy," had "just broken a window with a sledgehammer," "was trying to stab everybody with a knife through the broken window," and may be "high and drunk." Gary Alvarado informed the 911 operator that he was concerned that his mother was in the house with Plaintiff and repeatedly asked the police to "hurry" to the duplex.

Once the officers arrived at the duplex, Officer Walden spoke with Jimmy Alvarado—Plaintiff's twenty-year-old son—and Gary Alvarado, both of whom rent and live in the east side of the duplex. Plaintiff's sons again rehearsed to the officers what had happened and informed the officers that their mother was in the duplex with Plaintiff and that she might be in danger. Accordingly, the officers proceeded to knock on Plaintiff's door to effectuate his arrest.

Plaintiff testified in his deposition that he expected the police would be called because of

the shattered window and, upon hearing the knock, knew that it was the police. Despite this knowledge, Plaintiff opened the door waiving a large wooden stick and commenced yelling at the officers in garbled speech which the officers could not understand. To all officers present, Plaintiff was visibly agitated.[3] After Plaintiff failed to obey commands by the officers to "put your hands on your head," and Officer Allen's command for the suspect to put down the stick, Officer Allen drew his firearm, pointed it at Plaintiff, and again ordered him to put down the stick. At this point, Plaintiff complied and leaned the wooden stick against the inside of the door frame.

Despite complying with the command to put down the wooden stick, Plaintiff continued to yell at the officers in an angry tone. The officer again ordered Plaintiff to put his hands on his head. Officer Allen continued to point his firearm at Plaintiff and Sgt. Wyant drew his taser and pointed it at Plaintiff. Despite these repeated commands, Plaintiff did not put his hands on his head, but continued to yell in an agitated manner in garbled speech.

While staring directly at Officer Allen, Plaintiff suddenly appeared to rapidly charge towards the officer. Sgt. Wyant, believing that Plaintiff was attempting to attack Officer Allen, immediately fired his taser, which struck Plaintiff in the chest and belly area. According to the taser log, the taser was fired for a duration of five seconds.

After Plaintiff was hit with the taser darts, he fell to the ground. The taser did not appear to fully incapacitate Plaintiff, however, as he continued to struggle and move towards the front

---

[3]Plaintiff testified in his deposition that he was agitated because he thought the officers were kicking the door.

door of his duplex. Sgt. Wyant again tased Plaintiff for an additional 4 seconds. After Plaintiff was tased the second time, Plaintiff continued to struggle, did not obey commands, and continued to yell at the officers in a combative tone.

After the taser deployment, Officer Allen attempted to secure Plaintiff, giving him additional commands to place his hands behind his back. Instead, Plaintiff rolled onto his stomach and put his hands underneath his chest so that Officer Allen could not secure Plaintiff's wrists or place him in handcuffs. Officer Allen was unable to secure control of Plaintiff's hands through physical force.

Plaintiff continued to struggle towards the front door, where he had placed the large wooden stick. The officers also testified that, at the time, they did not know whether Plaintiff still had the knife on his person. Officer Walden testified that he became concerned for the safety of himself and the other officers present. Thereafter, Officer Walden moved his police service dog into position near Plaintiff and gave a command to the dog to engage the suspect in a bite-hold. The police service dog engaged Plaintiff in a bite-hold on the calf area of his left leg. Immediately upon the dog's bite, Plaintiff became submissive and the officers were able to place him in handcuffs.

## II. LEGAL STANDARD

As discussed previously, when an opposing party fails to timely respond to a motion, the Court may grant the motion without further notice.[4] However, federal courts have made clear

---

[4] DUCivR 7-1(c).

that "it is improper to grant a motion for a summary judgment simply because it is unopposed."[5] In such situations, the standard for summary judgment is somewhat modified.[6] "It is the role of the court to ascertain whether the moving party has sufficient basis for judgment as a matter of law. In so doing, the court must be certain that no undisclosed factual dispute would undermine the uncontroverted facts."[7] The Court "must consider the plaintiff's . . . claim based on the record properly before the court, viewing the uncontested facts in the light most favorable to the non-moving party."[8]

III. DISCUSSION

Defendants contend that Plaintiff cannot demonstrate that their conduct violated a clearly established statutory or constitutional right and that, therefore, they are entitled to qualified immunity from suit.

At the outset, the Court notes that "[w]hen a defendant asserts qualified immunity at summary judgment, the burden shifts to the plaintiff to show that: (1) the defendant violated a constitutional right and (2) the constitutional right was clearly established."[9] If the plaintiff

---

[5] *E.E.O.C. v. Lady Baltimore Foods, Inc.*, 643 F. Supp. 406, 407 (D. Kan. 1986) (citing *Hibernia Nat'l Bank v. Administracion Central Sociedad Anonima*, 776 F.2d 1277, 1279 (5th Cir. 1985)).

[6] *Thomas v. Bruce*, 428 F. Supp. 2d 1161, 1163 (D. Kan. 2006).

[7] *Id.* (citing *Lady Baltimore Foods*, 643 F. Supp. at 407).

[8] *Sanchez-Figueroa v. Banco Popular de Puerto Rico*, 527 F.3d 209 (1st Cir. 2008).

[9] *Thompsen v. Salt Lake Cnty.*, 584 F.3d 1304, 1312 (10th Cir. 2009) (citation omitted).

5

cannot establish a violation of a constitutional right, the Court need not inquire into whether the constitutional right was clearly established.[10]

Plaintiff claims that the Defendants employed excessive force in using a taser and a police service dog against him. "An officer using force in the course of a seizure of a citizen is entitled to qualified immunity unless the level of force violated clearly established Fourth Amendment law."[11] The Court's inquiry

> turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken. The precise question asked in an excessive force case is "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation."[12]

Objective reasonableness "is evaluated under a totality of the circumstances approach," which involves the consideration and balancing of factors such as: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."[13] In evaluating the reasonableness of an officer's actions, the Court must "recognize that officers may have to make split-second judgments in uncertain and dangerous circumstances."[14] Thus, the officer's actions

---

[10] *Id.*

[11] *Id.* at 1313.

[12] *Id.* (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989)).

[13] *Id.*

[14] *Id.* (internal quotation marks and citation omitted).

"must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."[15]

Applying this standard to the present action, the Court finds that Officer Walden and Sgt. Wyant acted reasonably given the circumstances they faced on the night in question. Prior to arriving on the scene, dispatch informed the officers that there was a domestic dispute in progress, where the father was brandishing a knife and had broken his son's window with a sledgehammer. Once on the scene, the officers were informed by Plaintiff's sons that Plaintiff had attempted to stab them and that their mother was in the other duplex with Plaintiff. After the officers knocked on the door and announced their presence as police officers, Plaintiff opened the door carrying a large wooden stick and started yelling garbled expressions at the officers. Plaintiff failed to comply with the officers' repeated commands and unexpectedly appeared to lunge at one of the officers.

Faced with these circumstances, Sgt. Wyant deployed his taser against Plaintff. The Court finds that a reasonable officer in Sgt. Wyant's position would have a reasonable concern for the safety of himself and others as to justify the use of a taser. Further, the Court finds Sgt. Wyant's second use of the taser after the first deployment to be objectively reasonable. At the moment Sgt. Wyant made the decision to fire the taser a second time, he faced a rapidly developing situation where the suspect had been hit by taser darts, yet was not rendered immobile. Plaintiff was actively struggling and resisting arrest even after falling to the ground.

---

[15]*Graham*, 409 U.S. at 396.

The officers did not yet have Plaintiff subdued and Plaintiff's continued resistance in light of the totality of the circumstances justified the second use of the taser.

As discussed previously, Plaintiff continued to resist arrest after the second use of the taser. After being hit a second time with the taser, Plaintiff rolled onto his stomach and pulled his arms in under his chest, making it impossible to place him in handcuffs. Officer Allen attempted through physical force to wrest Plaintiff's arms out from under him, but was unable to do so due to Plaintiff's size and position. Further, at this point in time, it was not apparent whether Mr. Alvarado was armed with the knife. Faced with these circumstances, Officer Walden decided to use his police service dog in a bite-hold against Plaintiff. The Court notes that Officer Walden did not simply unleash the police service dog, but rather retained control of the dog's leash and neckchain and directed the dog to bite Plaintiff's lower leg, avoiding any bite to Plaintiff's neck or head. The Court finds that in these circumstances, the use of a police service dog was objectively reasonable.

Because Defendants' use of force was objectively reasonable given the totality of the circumstances, Defendants did not violate Plaintiff's Fourth Amendment rights. Plaintiff has, therefore, failed to demonstrate a constitutional violation and the Defendants are entitled to qualified immunity. The Court will grant Defendants' Motion.

## IV. CONCLUSION

It is therefore

ORDERED that Defendants' Motion for Summary Judgment (Docket No. 41) is GRANTED.

The Clerk of the Court is directed to close this case forthwith.

DATED   April 26, 2011.

BY THE COURT:

_____
TED STEWART
United States District Judge